**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
Brittany S. Scott
28 Geary Str Suite 640 # 1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: yeremey@skclassactions.com
        brittany@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (California Bar No. 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN KOLKIN, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>FLORIDA NATURAL GROWERS, INC.,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Martin Kolkin ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Florida Natural Growers, Inc. ("Defendant"), seeking monetary damages and other remedies.

## NATURE OF THE CASE

1.      This is a putative class action lawsuit on behalf of purchasers of Florida's Natural Orange Juice products[1] (the "Products").  Defendant manufactures, markets, and sells the Products under its "Florida's Natural" brand:



_____

[1] The Products include all Florida's Natural orange juice products in 11 fl oz, 52 fl oz, and 89 fl oz containers.

2.      The Products prominently state on the front label that Florida's Natural is "Owned By Florida Farmers" next to an image of a United States Flag (collectively the "Florida Representations"):

  

The Florida Representations collectively represent that the Products are made exclusively of premium Florida orange juice.

3.      Defendant intentionally misleads consumers into believe that the Products are made exclusively of premium Florida orange juice.  It does this because consumers believe Florida orange juice tastes better and is better quality than imported orange juice.

4.      However, unbeknownst to consumers, the Products are actually blended with orange juice from Mexico and Brazil and are not in fact made exclusively from Florida oranges.

5.      As such, Defendant has engaged in widespread false and deceptive conduct by designing, marketing, manufacturing, distributing, and selling the Products with the Florida Representations.  Every package of the Products misleads consumers into believing the Products are made exclusively of Florida orange juice.

6.      Plaintiff and Class members purchased the Products, which are designed, marketed, manufactured, distributed, and sold by Defendant.  Further, Plaintiff and Class members relied to

their detriment on Defendant's Florida Representations, when the Products contain orange juice from Mexico and Brazil. Plaintiff and Class members would not have purchased the Products – or would not have paid as much as they did to purchase them – had they known the Florida Representations were false. Plaintiff and Class Members thus suffered monetary damages as result of Defendant's deceptive and false representations.

7.     Plaintiff brings this action individually, and on behalf of similarly situated individuals who purchased the falsely and deceptively labeled Products for violations of California's Consumer Legal Remedies Act, Cal. Bus. & Prof. Code § 1750, *et seq.*; California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; California's Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.*, breach of express warranty, fraud, and unjust enrichment.

## **PARTIES**

8.     Plaintiff Martin Kolkin is a citizen and resident of Sacramento, California, who has an intent to remain there, and is therefore a domiciliary of California. On August 14, 2025, Plaintiff purchased an 89 fl oz jug of Florida's Natural 100% Premium Orange Juice for approximately $5.53 from Safeway in Sacramento, California. Prior to his purchase of the Product, Plaintiff reviewed the product's labeling and packaging and saw that his Product was labeled and marketed with the Florida Representations. Based on the Florida Representations, Plaintiff believed he was purchasing orange juice made exclusively of Florida orange juice. Plaintiff relied on Defendant's Florida Representations in deciding to purchase his Product. Accordingly, the Florida Representations were part of the basis of the bargain, in that he would not have purchased his Product on the same terms had he known the Florida Representations were not true. In making his purchase, Plaintiff paid a price premium of 50% for a product that was made exclusively of Florida orange juice.

9.     Florida Natural Growers, Inc. is a Florida corporation with its principal place of business at 2005 Highway 27, Lake Wales, Florida. Defendant formulates, manufactures, labels,

markets, distributes, and sells the Products nationwide.  Defendant has maintained substantial

distribution and sales in this District.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

because this case is a class action where the aggregate claims of all members of the proposed class

are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the

proposed class is citizen of a state different from Defendant.

11.     This Court has specific jurisdiction over Defendant because it conducts substantial

business within California, including the sale, marketing, and advertising of the Products.

Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this

State, including Plaintiff's purchase.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant does

substantial business in this District and a substantial part of the events giving rise to Plaintiff's

claims occurred in this District.

**FACTUAL ALLEGATIONS**

**I.      Consumer Preference For Florida Orange Juice**

13.     The connection between Florida and oranges is so extensive that one of Florida's

nicknames is "The Orange State", the state fruit is oranges, the state flower is orange blossoms, and

the state beverage is orange juice:[2]



State Beverage
ORANGE JUICE

Whenever the words "orange juice" are read, written, or spoken, many people automatically think of Florida.

During the Second World War, scientists invented a process for making concentrated orange juice. Soon, a frozen concentrate was developed that transformed orange juice production into a multi-billion-dollar industry. In 1967 the Florida legislature designated orange juice as the official state beverage.

---

[2] https://dos.fl.gov/florida-facts/florida-state-symbols/state-beverage/

14.     Citrus, and oranges in particular, are so important to Florida that Florida has a Department of Citrus ("FDOC") whose sole purpose is to "maximize consumer demand for Florida citrus products[.]"[3]

15.     To achieve this purpose, the FDOC has cultivated the perception that Florida oranges are a premium product:





16.     Because the citrus industry is a key contributor to the Florida economy, consumer perception and preferences for Florida orange juice have been studied by academics sponsored by the Florida Department of Citrus.

---

[3] https://oppaga.fl.gov/ProgramSummary/ProgramDetail?programNumber=4127

17.    In December 2021, researchers at the University of Florida published a study titled *Consumer Perceptions and Preferences toward Florida Orange Juice*. The study examined whether Florida branding created value in consumers' perceptions. After conducting a national consumer survey to evaluate consumer preference and perception of orange juice and its origins, researchers found there was a strong preference for Florida orange juice over orange juice from other origins:[4]



Figure 5. Consumers' preferred orange juice origins.

18.    The same study found that consumers overwhelmingly preferred Florida orange juice because it tastes better and is of better quality.[5]

19.    In 2022, researchers from the University of Florida published a study titled *Not All Juices are the Same: The Superior Perception and Preference for Florida Orange Juice*. The study examined whether orange juice consumers were willing to pay more for orange juice with "Florida" branding. Researchers found that orange juice marketing with "Florida" branding

---

[4] Yan Heng et al., *Consumer Perceptions and Preferences toward Florida Orange Juice*, EDIS (2021)
[5] *Id.*

elicited higher premiums from consumers compared to origin-neutral orange juice. In particular, the study reported that consumers were willing to pay a premium of approximately 50% for 100% Florida orange juice.[6]

## II.    Defendant's Florida Representations

20.    Defendant falsely and misleading labels its Products with Florida Representations placed on the front of the Products packaging intentionally to mislead consumers into believing the Products are made exclusively of Florida orange juice:







---

[6] Yan Heng, et al., *Not All Juices are the Same: The Superior Perception and Preference for Florida Orange Juice*, Journal of Agricultural and Applied Economics 54, 621-633 (2022)







21.     This message is reinforced by Defendant's marketing and advertising.  For example, the side-panel of the Products include the following language:

22.     Further, this message is emphasized by the inclusion of the United States Flag on the Products' front label, which conveys that the orange juice is "Made in the USA."  The use of the United States Flag is considered an implied "Made in the USA" claim under the Federal Trade Commission's Made in USA Labeling Rule, which states a "made in the United States" claim is "any representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin"  16 C.F. R. § 323(a).

23.     An implied "Made in the USA" claim is made when a product includes U.S. symbols or geographic references like the United States Flag. An implied claim is deceptive unless "all or virtually all ingredients . . . are made and sourced in the United States."  16 C.F.R. 323.2.

24.     Where, as here, the ingredients are grown and sourced from Mexico and Brazil, the implied "Made in the USA" claim is false and misleading.



25.     Taken together, it is clear that Defendant's marketing and advertising is designed to mislead the reasonable consumer into believe the Products are made from Florida oranges.

**III.     The Products Contain Orange Juice From Brazil And Mexico**

26.     Historically, Defendant's Products were made with exclusively with Florida oranges grown by Defendant's grower members.  However, Florida's citrus groves have been in decline due to plant diseases like citrus canker and citrus greening which have crippled citrus groves.

27.     In an effort to keep its market share and meet consumer demand for orange juice, Defendant began to include orange juice from Mexico and Brazil in May of 2022.

28.     Because the Products contain juice from Brazil and Mexico, Defendant's Florida Representations are misleading and deceptive.

**IV.     Defendant's Florida Representations Harm Consumers**

29.     Plaintiff and Class members purchased the Products in reliance on the Florida Representations, reasonably believing the Products were made exclusively of Florida orange juice.

30.     Plaintiff's and Class members' reasonable belief that the Products were made exclusively of Florida orange juice was a significant factor in their decisions to purchase the Products.

31.     Plaintiff and Class members did not know, and had no reason to know, that the Products contained juice from Brazil and Mexico because of how the Products are deceptively labeled and advertised to create the impression the Products are made exclusively of Florida orange juice.  Nothing on the front packing of the Products indicates that the Products contain orange juice from Brazil and Mexico.

32.     Defendant knew that Plaintiff and Class members would rely on the Florida Representations and would therefore reasonably believe the Products contained exclusively Florida orange juice.

33.     As discussed above (*supra* ¶¶ 17-19), consumers are willing to pay more for Florida orange juice.  They are also induced to make purchases that they otherwise would not have, but for the belief that the Products are made exclusively of Florida orange juice.  Plaintiff and Class members would not have purchased the Products had they known that the Products were not exclusively made of Florida Oranges.  Further, Plaintiff and Class members paid a price premium for the Products of approximately 50% because of the Florida Representations.  Therefore, Plaintiff and Class members suffered an injury in fact and lost money as a result of Defendant's false and misleading Florida Representations.

**V.     No Adequate Remedy at Law**

34.     Plaintiff and members of the California Subclass are entitled to equitable relief as no adequate remedy at law exists.

35.     **Broader Statues of Limitations.**  The statutes of limitations for the causes of action pled herein vary.  The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA.  Thus, California Subclass Members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, California Subclass Members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty or fraud will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

36.     **More Prompt, Certain, and Efficient.**  Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Legal claims for damages are not equally certain as restitution because claims under the UCL and other equitable claims entail few elements.

37.     **Broader Scope of Conduct.**  In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Florida Representations, including the Products' label and packaging, over a long period of

time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Florida Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and the California Subclass may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct; common law fraud claims require a showing of actual deception or reliance).

38.    **Injunctive Relief to Cease Misconduct and Dispel Misperception.**  Injunctive relief is appropriate on behalf of Plaintiff and the California Subclass because Defendant continues to misrepresent the Products with the Florida Representations.  Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm - none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of removing the Florida Representations is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts.  An injunction requiring removal of the claim will prevent the ongoing deception and repeat purchases based thereon. It is also not available through a legal remedy (such as monetary damages).  In addition, injunctive relief is necessary because, because discovery and Plaintiff's investigation has not yet completed.  Moreover, example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its

members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

39.    **Public Injunction.**  Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

40.    **Procedural Posture - Incomplete Discovery & Pre-Certification.**  Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet.  No expert discovery has commenced and/or completed.  The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass.  Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ALLEGATIONS

41.    ***Class Definition***: Plaintiff brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

Nationwide Class: all people in the United States who purchased the Product for personal or household use during the last four years.

California Subclass: all people in California who purchased the Product for personal or household use during the last four years.

42.    Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

43.     Specifically excluded from the putative classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

44.     ***Numerosity***. Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its agents, or other means.

45.     ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a.     Whether Defendant misrepresented and/or failed to disclose material facts concerning the Product;

b.     Whether the omissions and representations on the Product's label and the Product's marketing materials, or any single omission or representation, is false, misleading, and/or deceptive;

c.     Whether Defendant's conduct in advertising and selling the Product amounted to unlawful, unfair, and/or deceptive business practices;

d.     Whether Defendant breached an express and/or implied warranty created through the labeling and marketing of its Product;

e.     Whether Plaintiff and the Class Members are entitled to equitable and/or injunctive relief;

f.     Whether Plaintiff and the Class Members have sustained damage as a result of Defendant's unlawful conduct;

g.     The proper measure of damages sustained by Plaintiff and the Class Members; and

h.     Whether Defendant was unjustly enriched by their unlawful practices.

46.     ***Typicality***. The claims of the Plaintiff are typical of the claims of the Class Members in that Plaintiff and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

47.     ***Adequacy***. Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the classes. Plaintiff has no interests that are antagonistic to those of the Class Members. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed Class Members.

48.     ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for Class Members; the Class Members are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

49.     Defendant has acted or failed to act on grounds generally applicable to the Class Members, thereby making appropriate final injunctive relief with respect to the Class Members as a whole.

50.     Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Class Members and will likely retain the benefits of its wrongdoing.

### COUNT I
**Violation of California's Consumer Legal Remedies Act**
**Cal. Bus. & Prof. Code § 1750, *et seq.***
**(On Behalf of the California Subclass)**

51.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

53.    Plaintiff and the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

54.    Plaintiff, Class Members, and Defendant have engaged in "transactions" as that term is defined by California Civil Code § 1761(e).

55.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

56.    As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other Class Members that the Products are made of exclusively Florida oranges when in fact the Products contain juice from Brazil and Mexico..

57.    As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(4), (a)(5), (a)(7), and (a)(9).

58.    Defendant's Florida Representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

59.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

60.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

61.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass.

62.    Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (1) they would not have purchased the Products if they had known that the Products contained juice from Brazil and Mexico; and (2) they overpaid for the Products

because the products are sold at a price premium due to Defendant's misrepresentations.

63.    Accordingly, Plaintiff, on behalf of himself and all other members of the California Subclass, seeks damages and to enjoin the unlawful acts and practices described herein.

64.    On August 22, 2025, a CLRA demand letter was sent to Defendant's headquarters and registered agent, via certified mail with return receipt requested.  This letter provided notice of Defendant's violation of the CLRA, for Plaintiff and the class, and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein.

**COUNT II**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Subclass)**

65.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

66.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

67.    Defendant's acts and practices, as described above, have deceived and are likely to continue to deceive Class Members and the public.  As described throughout this Complaint, Defendant misrepresented the Products as being made exclusively of Florida oranges. By its actions, Defendant disseminated uniform advertising regarding the Products to and across California and the United States.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq.*  Such advertisements were intended to – and likely did – deceive the consuming public.

68.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant represented that the Products were made of exclusively Florida oranges, when in fact the Products contain orange juice from Brazil and Mexico.

69.    In making and disseminating these statements, Defendant knew, or reasonably should have known, that its advertisements were untrue and misleading in violation of California law.  Plaintiff and the California Subclass based their purchasing decision on Defendant's Florida

Representations. Plaintiff and the California Subclass were injured in fact and lost money as a result.

70.    The misrepresentations by Defendant about the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

71.    As a result of Defendant's wrongful conduct, Plaintiff and the Class Members lost money in an amount to be proven at trial. Plaintiff and the Class Members are therefore entitled to restitution as appropriate for this cause of action.

72.    Plaintiff seeks all available relief under the FAL.

<u>**COUNT III**</u>
**Violation of California's Unfair Competition Act**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of the California Subclass)**

73.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

74.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

75.    California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." For the reasons discussed above, Defendant has engaged unlawful, unfair, and fraudulent business acts or practices in violation of California Business and Professions Code § 17200.

76.    Defendant has violated the UCL by engaging in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770(a)(4), (a)(5), (a)(7), and (a)(9), by violating California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and by violating the common law by, inter alia, making false representations and warranties concerning the Products and retaining the unlawfully obtained benefit therefrom. Plaintiff reserves the right to allege additional violations of law which constitute other unlawful business acts or practices.

77.    Defendant has also violated the UCL's prohibition on unfair business practices because its conduct is substantially injurious to consumers, offends public policy, and is immoral,

unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

78.    There were reasonably available alternatives to further Defendant's legitimate business interest other than by engaging in the conduct described above.

79.    Defendant has further violated the UCL's prohibition on fraudulent business practices by making knowingly, or that which Defendant reasonably should know, false and misleading representations and warranties about its Products which were likely to deceive the consuming public within the meaning of Bus. & Prof. Code § 17200.

80.    Plaintiff and the California Subclass suffered a substantial injury by virtue of buying Products they would not have purchased absent Defendant's unlawful, unfair, and fraudulent marketing and advertising about the capability of its Products.

81.    There is no benefit to consumers or competition from marketing claiming that the Products were made exclusively out of Florida orange juice when they were not.

82.    Plaintiff and the California Subclass had no way of reasonably knowing that the Products they purchased was not marketed, packaged, or labeled accurately.  Thus, they could not have reasonably avoided the injury each of them suffered.

83.    The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the California Subclass.

84.    Plaintiff seeks all available relief under the UCL.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of the Class and Subclass)**

85.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

86.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

87.     As the designer, manufacturer, marketer, distributor, and/or seller of the Product, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products were made exclusively out of Florida oranges.

88.     Defendant's representations were part of the description of the Products and the bargain upon which the Products were offered for sale and purchased by Plaintiff and Class Members who reasonably relied on those representations.

89.     In fact, the Products do not conform to the above-referenced representation because, as alleged in detail above, the Products contain orange juice from Brazil and Mexico. Thus, the warranty was breached.

90.     On August 22, 2025, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant warranty notice letters that complied in all respects with U.C.C. 2-607. The letters provided notice of breach of express warranty.  The letter was sent via certified mail with return receipt to Defendant advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letters stated that they were sent on behalf of Plaintiff and all other similarly situated purchasers.

91.     As a direct and proximate results of Defendant's breach, Plaintiff and Class Members were injured because they: (1) paid money for Products that were not as Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false Florida Representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

92.     Plaintiff seeks all available relief under this cause of action.

## COUNT V
### Unjust Enrichment
### (On Behalf of the California Subclass)

93.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

94.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

95.     To the extent required by law, Plaintiff alternatively styles this cause of action as a quasi-contract claim seeking restitution.

96.     Plaintiff and the California Subclass conferred benefits on Defendant by purchasing the Products.

97.     Defendant has been unjustly enriched in retaining the revenues derived from the California Subclasses' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant warranted that the Products were made exclusively from Florida oranges when, in fact, they contain orange juice from Brazil and Mexico. Defendant's misrepresentations caused injuries to Plaintiff and the California Subclass because they would not have purchased the Products if the true facts were known.

98.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the California Subclass is unjust and inequitable, Defendant must pay restitution to Plaintiff and the California Subclass for its unjust enrichment, as ordered by the Court.

99.     Plaintiff and the California Subclass have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.  They lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**COUNT VI**
**Fraud**
**(On Behalf of the Class and California Subclass)**

100.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

101.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

102.    As discussed above, Defendant provided Plaintiff and Class and Subclass members with false or misleading material information about the Products, including but not limited to the fact that the Products were made exclusively of Florida orange juice.

103.    These misrepresentations were made with knowledge of their falsehood.

104.    The misrepresentations made by Defendant, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class and Subclass members to purchase the Product.

105.    The fraudulent actions of Defendant caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the classes and naming Plaintiff as the representative of the classes;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the classes on all counts asserted herein;

d.    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the classes their reasonable attorney fees, expenses, and costs of suit.

### **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  October 8, 2025                          Respectfully submitted,

*/s/ Brittany S. Scott*

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
Brittany S. Scott
28 Geary Str Suite 640 # 1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: yeremey@skclassactions.com
           brittany@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (California Bar No. 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Brittany S. Scott, declare as follows:

1.      I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify hereto.

2.      I am the attorney for Plaintiff in the above-captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on October 8, 2025 in Oakland, CA.

By:   /s/ Brittany S. Scott
Brittany S. Scott